IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DARRYL NEWMAN,
GWENDOLYN FOREHAND,
and DOYLE HESTER,

      Plaintiffs,

v.                                  Case No.  4:16cv69-MW/CAS

THE CONSOLIDATED DISPATCH
AGENCY

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

This is an equal protection and due process case. Plaintiffs are former dispatchers and call-takers for Defendant, Consolidated Dispatch Agency ("CDA"), the legal entity responsible for Leon County's dispatch services. Plaintiffs were on duty on November 22, 2014, when a concerned citizen reported a house fire at 3722 Caracus Court in Tallahassee ("Caracus Court incident"). Plaintiffs collectively answered and dispatched the call to first responders, but did not warn them that the home's owner had threatened to shoot any law enforcement officer on his property. The resident, Curtis Wade Holley, made good on his threats, shooting two responding Leon County Sheriffs' deputies, and killing one. The CDA fired

Plaintiffs after the incident, alleging that their failure to warn the first responders violated CDA policy.

Plaintiffs filed suit. They claim that the CDA violated the Fourteenth Amendment's Equal Protection Clause by firing Plaintiffs—but not other similarly situated dispatchers—to deflect criticism from the Caracus Court incident. Plaintiffs also assert that the CDA violated Florida's Substantive Due Process Clause, by depriving them of their employment. The CDA moves for summary judgment on both counts. For the reasons stated below, that motion, ECF No. 124, is **GRANTED**.

## I.    Factual Background

This Court accepts the facts in the light most favorable to the non-movant. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008). It resolves all reasonable doubts about the facts in favor of the non-movant. *Id.* And it views the evidence presented by each moving party in the light most favorable to the non-movant. *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1404 (S.D. Fla. 2014) (citations omitted).

Under Florida law, local governments may consolidate public services and facilities into joint municipal agencies through "interlocal agreements." § 163.01, Fla. Stat. Local governments may also create separate legal or administrative entities to execute these agreements and run the agencies. The City of Tallahassee Police Department and Leon County Sheriffs' Office ("LCSO") signed an interlocal

agreement on May 31, 2012 consolidating their individual dispatch operations into a single municipal agency, the Consolidated Dispatch Agency. The agency, which opened in April 2013, receives and processes all emergency calls within Leon County and dispatches the information to the appropriate first responders.

The interlocal agreement states that the City of Tallahassee's personnel policies and procedures govern all CDA employees. ECF No. 106-2, at 5. The agreement also establishes a Board—consisting of the City Manager, the County Administrator, and the Leon County Sheriff—to govern the CDA. *Id.* at 4. The Board sets the CDA's operating procedures and hires its Director, which it may collectively, or individually, fire at will. *Id.* at 5. The CDA Director manages all dispatch operations within Leon County, and has the sole authority to hire and fire CDA employees. *Id.* at 7.

Plaintiffs worked as call-takers and dispatchers for the City of Tallahassee before joining the CDA as public safety communications officers ("PSCO") in April 2013. Plaintiff Hester was a call-taker, Plaintiff Newman a fire dispatcher, and Plaintiff Forehand a dispatch supervisor that trained new CDA employees. PSCOs answer emergency phone calls and dispatch them to the appropriate first responder unit. The CDA's dispatch software, known as the Motorola Premier One CAD system, allows CDA supervisors to pin premises and officer safety information to particular addresses. Dispatchers can view this information while handling or

dispatching service calls by clicking on the "premises hazards" tab. And first responders can view it on-site on their laptop computers.

On November 8, 2014, LSCO Wiley Meggs instructed a CDA shift supervisor to warn first responders that Curtis Wade Holley "has threatened to shoot any Law Enforcement that comes to" 3722 Caracus Court, Tallahassee, Florida. ECF No. 107, at 7. A supervisor entered this information as a "premises hazard" for that address. ECF No. 130-27, at 3.

Plaintiffs were working the morning of November 22, 2014, when a concerned citizen reported a house fire at 3722 Caracus Court. Plaintiff Hester answered the call and sent it to fire department and law enforcement dispatchers. Plaintiff Newman forwarded the call to the fire department, while Plaintiff Forehand supervised the law enforcement dispatcher trainee that forwarded the call to law enforcement. The Tallahassee Fire Department and Leon County Sheriff's Office dispatched first responder units to the scene. Plaintiffs, however, did not access the "premises hazard" tab for that residence. In other words, they did not warn first responders about Mr. Holley's threats.

Unfortunately, Mr. Holley followed through on his threats, wounding two LCSO deputies, and killing one. After the shooting, Leon County Sheriff and CDA Board Member Larry Campbell instructed the LCSO and the CDA to review the incident. The groups issued an internal report on December 5, 2014. *See* ECF No.

120-1, at 29–32. It concluded that the CDA had trained its PSCOs on "premises hazards" protocols and that the CAD system performed as intended. According to the report, however, Plaintiffs violated the CDA's protocols by failing to access and report premises hazards to first responders. *Id*. at 5. CDA Director Tim Lee, relying on this report, terminated Plaintiffs Newman and Forehand, and allowed Plaintiff Hester to retire in lieu of termination, for violating CDA policy. *See* ECF No. 130-10; 130-11; 130-12.

## II.    Equal Protection Claim

The Fourteenth Amendment's Equal Protection Clause requires that "those who are similarly situated be similarly treated." *Johnson v. Smith*, 696 F.2d 1334, 1336 (11th Cir. 1983) (quoting GERALD GUNTHER, CASES AND MATERIALS ON CONSTITUTIONAL LAW 678 (10th ed. 1980)), *overruled on other grounds by Dawson v. Scott*, 50 F.3d 884 (11th Cir. 1995). Plaintiffs do not allege discriminatory discipline based on a fundamental right or membership in a suspect class. Accordingly, the rational basis test applies. *See Heller v. Doe*, 509 U.S. 312, 319–20 (1993) (explaining that "[s]uch classifications cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate government purpose").

Plaintiffs argue that the CDA violated the Equal Protection Clause by firing them for failing to access and report premises hazards during the Caracus Court

incident—and after lightly punishing similarly situated dispatchers for allegedly comparable errors. To succeed, however, Plaintiffs' equal protection claim must overcome three high hurdles. First, they must demonstrate that they are members of an objectively identifiable class. Second, Plaintiffs must allege specific facts that indicate disparate treatment to similarly situated comparators on the basis of any objectively identifiable class or classes to which Plaintiffs belong. Third, they need to show that the CDA had no rational basis for its termination decisions. Plaintiffs are unable to overcome these hurdles. Accordingly, the CDA's motion for summary judgment is **GRANTED** as to Count I.

## A. Plaintiffs' Alleged Class Based on Discipline Arising from Third-Party Harm is Insufficiently Identifiable.

Equal protection claims must "allege that the plaintiff was a member of an identifiable group and that there was differential treatment 'based on their membership of that very group.'" *Glenn v. Brumby*, 632 F. Supp. 2d 1308, 1314 (N.D. Ga. 2009) (quoting *Pers. Administrator of Mass. v. Feeney,* 442 U.S. 256, 279 (1979)).[1] Specifically, they must offer substantive and objectively identifiable characteristics that "pop out" and allow courts to "separate readily entities or people into discrete groupings and clearly identify those persons that suffered the alleged

---

[1] The exception is "class of one" claims because they do not allege discrimination based on membership in an identifiable class. Plaintiffs in this case, however, cannot bring a "class of one" claim because such classes are not cognizable in the public employment context. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008).

discrimination and those persons that did not." *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1297 (11th Cir. 2012). In *Corey*, a company alleged that its "political outsider" status resulted in disparate treatment in comparison to "political insiders." The court characterized the company's alleged class as "too loose, too shifting to be useful to courts" and would result in "a fuzzy series of wholly indeterminate and overlapping groups." *Id*. at 1298.

Here, Plaintiffs allege they are members of four classes: (1) former Tallahassee Police Department communications officers (2) older than 45 years of age and with more than 20 years of dispatch experience, (3) that did not supervise other employees, and (4) that committed—and were disciplined for—an "operational error" that allegedly harmed a third party. ECF No. 107, at ¶¶ 58–64; ECF No. 132, at 4.

This fourth alleged class is too indeterminate and is not readily identifiable with objective standards. Similar to the failed class in *Corey*, Plaintiffs' alleged class of employees who were disciplined for actions that resulted in third-party harm are "too loose, too shifting," and lack "substantive group characteristics." *Corey*, 682 F.3d at 1297. In particular, Plaintiffs offer no specific information what a "third person harm" entails. *See* ECF No. 132, at 4. Conceivably, *any* action not taken in strict compliance with appropriate rules and procedures can result in harm to a third person. For example, an employee who submits a report to a supervisor late could

harm a third party who depends on the supervisor reviewing it quickly so the third party can leave the office. Harm to third parties could range from the most serious consequence, like a loss of life, as occurred here, to a trivial annoyance, such as a delay in leaving work. Simply put, this class grouping can *only* result in "a fuzzy series of wholly indeterminate and overlapping groups." *Corey*, 682 F.3d at 1298. Plaintiffs' "sole substantive characteristic shared by those in the supposed group" is the harm they—and only they—suffered. *Id*. at 1299. This is the sort of "tautological equating of cause and effect" that *Corey* threw cold water on. *Id*. at 1298.

For support, Plaintiffs turn to *Ryan v. City of Detroit*, 2015 WL 1345303 (E.D. Mich. Mar. 25, 2015), where a district court determined that a class of victims whose assailants were police officers constituted a sufficiently discrete class. *See* ECF No. 132, at 2. The district court was able to "readily determine whether an individual belongs to one group . . . or another group (victims whose assailants are not police officers)." *Ryan*, 2015 WL 1345303, at *6. Plaintiffs assert that here, like in *Ryan*, "offender identity is the basis for disparate treatment." ECF No. 132, at 4. However, *Ryan*—a decision this Court is not bound to—involved a wholly distinguishable class. There, the basis for the class was the identity of people who had harmed class members. The identity of these class members were anchored and easily discernible—either an assailant was a police officer or not. The victim could then be accordingly classified. Here, the basis of the class depends on class members'

actions—a class basis much less precise than an assailant's police-officer identity. After all, those actions are nebulously defined as anything that results in "third person harm." ECF No. 132, at 4. Based on that classification, this Court cannot "readily determine" whether someone is in the purported class or not.

Plaintiffs also cite *Eaton v. Siemens*, 2009 WL 4929262 (E.D. Cal. Dec. 14, 2009), to support the argument that a "distinct group of employees" can bring an equal protection claim against a government employer. ECF No. 132, at 3. In that case, the district court determined that a class of employees—identified as "not team players" compared to "team players"—had offered sufficient evidence of disparate treatment along class lines. *Eaton*, 2009 WL 4929262, at *8. Importantly, the defendant in *Eaton* acknowledged the existence of "the team," regularly referred to "team players" and "not team players," and openly encouraged the non-team members to "get on the team." *Id*. at *7. In this case, however, the CDA did not characterize employees based on harm to third parties. There was never a distinction between "employees who have harmed third parties and were disciplined for it" and everyone else. Rather, it is a classification that arose only for the purposes of this litigation. Except for their termination, Plaintiffs fail to offer evidence to show that they are "a distinct group of individuals" on these class grounds. *Id*. at *8. In short, Plaintiffs' alleged class that is based on discipline they received arising from harm to third parties is insufficiently identifiable.

This Court assumes arguendo that Plaintiffs' alleged classes on the bases of prior employment, age and longevity of service, and non-supervisory positions have readily identifiable distinctions that "pop out . . . into discrete groupings." *Corey*, 682 F.3d at 1297. Where individuals previously worked, how old they are, how many years they have been employed, and their non-supervisory job positions all seem to involve "some common set of traits" a court can readily identify. *Id*. at 1298. These appear to be the type of "strongly defined groupings" that the Eleventh Circuit determined would "potentially allow courts to identify clearly." *Id* (listing race, sex, and political party affiliation as examples of discrete groups that could be classes).

## B. Plaintiffs Fail to Demonstrate Their Identifiable Classes Were Subject to Disparate Treatment.

Even assuming these classes, Plaintiffs still must demonstrate that objectively identifiable classes were "similarly situated with other persons who received more favorable treatment." *Giraldo v. City of Hollywood Fla.*, 142 F. Supp. 3d 1292, 1301 (S.D. Fla. 2015) (quoting *Ardis v. Danheisser*, 2014 WL 103232, at *6 (N.D. Fla. Jan. 10, 2014)). Plaintiffs must offer more than conclusory allegations and cannot merely "rely on broad generalities in identifying a comparator." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n,* 558 F.3d 1301, 1307 (11th Cir. 2009) (quoting *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1204 (11th Cir. 2007)). The comparators must have been "similarly situated *in all relevant respects*" for an equal protection claim to have any teeth. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1204 (11th Cir. 2007)

(emphasis in original). This includes similar discipline for similar misconduct. If employers mete out discipline disproportionately among similarly situated employees, then courts have inferred discriminatory intent. *Lathem v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999). Critically, however, the Eleventh Circuit "require[s] that the quantity and quality of the comparator's misconduct be nearly identical." *Burke–Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

This Court does not mechanically apply the Eleventh Circuit's "nearly identical" standard. There may not always be a comparator that satisfies a strict application of that standard. Even so, a litigant cannot mix apples and oranges. That is, a valid comparator does not need to be precisely the same but the comparator still must have been engaged to similar conduct or misconduct to the Plaintiffs. After all, the Plaintiffs and the comparators must have been similar "*in all relevant respects*." *Griffin Indus.,* 496 F.3d at 1204 (emphasis in original).

Here, the Plaintiffs have not identified a sufficiently similar comparator. Plaintiffs identify four potential comparators: PSCOs Melanee Gardner, Valerie Whitlock, Lisa Cramer, and Daniel Mills. *See* ECF No. 124 at 11–12. Each erred while dispatching a call but, unlike Plaintiffs, their errors did not harm—much less result in the death of—a first responder. Therefore, not only was their conduct far

11

from "nearly identical" to plaintiffs, their conduct was also distinguishable in at least one critical "relevant respect"—death to a first responder.

Daniel Mills was a CDA dispatcher who formerly worked at the Leon County Sheriff's Office. ECF No. 125-11 at 10:4. Mills made a dispatching error when he selected a medical protocol in response to a 911 call when "[a] law enforcement code would have been more appropriate." ECF No. 120-1 at 18. This error resulted in a failure to inform first responders of an "uncleared, potential active-shooter situation." ECF No. 107, at ¶ 62. There, however, no harm resulted in any first responders.[2] Ms. Gardner and Ms. Cramer were, like Plaintiffs, formerly employed by the City of Tallahassee while Ms. Whitlock was hired directly by the CDA. Unlike the Plaintiffs' errors, their deviations from protocol did not result in any injuries to first responders. The conduct for which the CDA terminated Plaintiffs was substantially different to that of their fellow employees because Plaintiffs' actions resulted in harm to first responders. Plaintiffs' conduct, then, prevents a valid comparison to the potential comparators to be formed. *See, e.g., Local 491, Int'l Bhd. of Police Officers v. Gwinnett Cty., GA*, 510 F. Supp. 2d 1271, 1298 (N.D. Ga. 2007)

---

[2] Plaintiffs note that the errors of Mr. Mills delayed medical personnel as they responded to a shooting and transported the critically-wounded victim to the hospital. But they offer no evidence that the CDA alleged or believed that his errors caused or contributed to those injuries, or that they did in fact.

12

(quoting another source) (applying the Eleventh Circuit's "nearly identical" standard).

This Court finds no internal inconsistency in rejecting Plaintiffs' alleged class based on harm to third parties while also distinguishing, on the basis of that harm, Plaintiffs' three arguably valid classes. These are separate inquiries. In rejecting Plaintiffs' alleged class, this Court focused on the class's indeterminate and fluid characteristics, applying standards the Eleventh Circuit articulated in *Corey*. *See Corey*, 682 F.3d at 1297–98. Meanwhile, Plaintiffs had to identify valid comparators for this Court to analyze whether Plaintiffs were disparately treated on the basis of other classes. Because the Plaintiffs and the comparators had to be similarly situated in all relevant respects, this Court naturally looked to the characteristic that set the two groups most apart—Plaintiffs' failure to follow protocol *resulting* in harm to first responders. The tragic and fatal result from Plaintiffs' actions was a "relevant respect[]" that set them distinctly apart from the purported comparators. *Griffin Indus.,* 496 F.3d at 1204 (emphasis omitted).

Additionally, Plaintiffs offer no evidence to show that the CDA terminated them because of their previous employment or non-supervisory positions. And as it relates to the age-based class, Plaintiffs offer only one possible example of animus on the basis of that class: a comment by CDA Director Lee to Plaintiff Hester that dispatching is a "young man's game." ECF No. 107, at ¶ 55. A single statement,

however, is not sufficient for a jury question as it relates to the class based on age. Indeed, "a jury question does not exist because of the presence of a 'mere scintilla of evidence.'" *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995) (quoting *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). This Court finds that this solitary statement does not rise above a mere scintilla of evidence.

### C. The CDA Had a Rational Basis for its Termination Decisions.

Finally, although this Court is not convinced that Plaintiffs have shown impermissible disparate treatment along class lines, even if they had, the CDA only needed a rational basis to terminate them. *See Cook v. Bennett*, 792 F.3d 1294, 1301 (11th Cir. 2015) ("Rational basis review also applies to equal protection challenges concerned with a distinction between two groups drawn without reference to a protected class.") (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). A classification that does not involve a suspect class or fundamental rights—such as at issue here—"must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993).

Here, it would be perfectly rational—and not illegal—to fire employees for mistakes made during highly publicized incidents in which law enforcement officers

died. This is what the CDA did. It would not be rational, however, if the CDA's termination decisions were pursuant to some illegal purpose like intentional discrimination. Equal protection claims must show that the state actor intentionally discriminated against the plaintiffs because they belonged to the disfavored group. *Corey*, 682 F.3d at 1297 (quoting *Parks v. City of Warner Robins,* 43 F.3d 609, 616 (11th Cir. 1995)) ("[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim."). This element, however, implies more than intent as volition or awareness of consequences. See *United Jewish Orgs. v. Carey,* 430 U.S. 144, 179 (1977) (Brennan, J., concurring). Specifically, it requires proof that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Corey*, 682 F.3d at 1297 (quoting *Pers. Administrator. of Mass.,* 442 U.S. at 279).

The evidence does not demonstrate, or even imply, such an improper intent. Plaintiffs offer no evidence that the CDA terminated them because they were part of any of their alleged classes. Their sole evidence of discriminatory intent is Director Lee's statement that working as a dispatcher is a "young man's game." ECF No. 107, at ¶ 55. But this mere scintilla of evidence does not create a jury question.

Plaintiffs should be applauded for their creativity. They faced a high hurdle because employers can terminate at-will employees "for a good reason, a bad reason,

a reason based on erroneous facts, or no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall*, 738 F.2d 1182, 1187 (11th Cir. 1984). Plaintiffs' attempts to squeeze the CDA's terminations into a prohibited "discriminatory reason" under the Equal Protection Clause is certainly innovative. But Plaintiffs cannot squeeze a square peg through a round hole. This Court need not decide whether the CDA's decisions were just or sensible—only whether they were rational and non-discriminatory. The CDA had a rational basis for its decisions and Plaintiffs do not demonstrate the CDA possessed discriminatory intent. As a result, Plaintiffs' equal protection claim fails.

### III.      Substantive Due Process Claim

Plaintiffs also allege that the CDA violated their substantive due process rights under Florida's constitution when the CDA fired them to deflect criticism from the Caracus Court incident. This Court, however, finds that they had no property interest in their jobs. Accordingly, their substantive due process claim fails, and the CDA's motion for summary judgment is **GRANTED** as to Count II.

Article I, section 9 of the Florida Constitution states that no person shall be deprived of life, liberty or property without due process of law. Art. I, § 9, Fla. Const. This clause protects public employees from being "terminated in an arbitrary and capricious manner and for an improper motive." *Hous. Auth. of Tampa v. Robinson*, 464 So. 2d 158, 165 (Fla. 2d DCA 1985). Employees, however, must demonstrate a

property interest in their position. *See McRae v. Douglas*, 644 So. 2d 1368, 1372 (Fla. 5th DCA 1994) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972) *and Perry v. Sindermann,* 408 U.S. 593 (1972)) (addressing property interests in the procedural due process context). Courts review their claims under the same rational basis standard as with equal protection claims.[3] Employees have a property interest if state law "provides legitimate expectations of continued employment." *Doyle v. Dep't of Bus. & Prof'l Regulation*, 713 So. 2d 1040, 1045, n.6 (Fla. 1st DCA 1998) (citations omitted). The general rule under Florida law is that "employees who are employed for an indefinite term are at-will employees who may be terminated for any reason at any time." *Donnell v. Lee Cty. Port Auth.*, 509 F. App'x 903, 905 (11th Cir. 2013) (citing *Smith v. Piezo Tech. & Prof'l. Adm'rs.,* 427 So. 2d 182, 184 (Fla. 1983)). At-will employees, as a result, have no right to continued employment, and thus no property interest in their positions.

Here, the CDA's policy manual does not define an employment term.[4] Thus, Plaintiffs are at-will employees. ECF 106-1, at 34–35. But Plaintiffs may establish a property interest through a "statute, ordinance or contract, as well as by policies

---

[3] The standard is "essentially equivalent" in both the substantive due process and equal protection contexts. *See Cook v. Bennett*, 792 F.3d 1294, 1301 (11th Cir. 2015) ("Rational basis review in the context of equal protection is essentially equivalent to rational basis review in the context of due process.").

[4] Technically, under the terms of the interlocal agreement, the CDA's personnel manuals are "administered in accordance with" the City of Tallahassee's Personnel Policies and Procedures Manual. *See* ECF No. 106-2, at 5.

and practices of an institution which support claims of entitlement." *Metro. Dade Cty. v. Sokolowski*, 439 So. 2d 932, 934 (Fla. 3d DCA 1983) (citations and quotations omitted) (addressing property interest in procedural due process context). Plaintiffs, then, claim a property interest through an implied contract with the CDA.

Plaintiffs argue that the CDA's policy manual is an implied contract that creates a property interest because it "provide[s] that employees may only be discharged for extremely serious offenses or repetition of other offenses and in the manner specifically provided for under such policies." ECF No. 1, at 9; *see also* ECF No. 107, at ¶¶ 75–80. Plaintiffs' argument misses the mark.

This Court is bound by state courts' decisions on this issue. "The sufficiency of a claim of entitlement must be decided by reference to state law." *United Steelworkers of America, AFL-CIO v. Univ. of Alabama*, 599 F.2d 56, 60 (5th Cir. 1979) (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976)).[5] Florida law is clear—and fatal to Plaintiffs' due process claim. Florida's courts "have expressed a decided reluctance to find that provisions in an employee handbook or policies and procedures manual rise to the level of enforceable contract rights." *Walton v. Health Care Dist.*, 862 So. 2d 852, 855 (Fla. 4th DCA 2003). Generally, then, "policy statements contained in employment manuals do not give rise to enforceable contract

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

rights in Florida unless they contain specific language which expresses the parties' *explicit mutual agreement* that the manual constitutes a separate employment contract." *Quaker Oats Co. v. Jewell*, 818 So. 2d 574, 576–77 (Fla. 5th DCA 2002) (emphasis added). That is true even for manuals that require "just cause" for discipline. *Lurton v. Muldon Motor Co.*, 523 So. 2d 706, 708 (Fla. 1st DCA 1988).

Plaintiffs cite decisions from this Court and the Eleventh Circuit discussing claims based on the *federal* constitution's substantive due process jurisprudence and holding that employment manuals can create property interests without explicit language.[6] These cases are inapposite because it is the Florida Constitution—not the U.S. Constitution—at issue here. Further, state law has developed since the federal cases Plaintiffs cite. More recently, state courts have emphasized that state law controls state substantive due process analysis. "What matters is what state courts have said about a state constitutional claim, not what federal courts have said about a similar federal right." *Bennett v. Walton City*, 174 So. 3d 386, 395 (Fla. 1st DCA 2015) (Makar, J., concurring). Plaintiffs acknowledge as much. *See* ECF No. 18, at 8 (quoting extensively Judge Makar's concurrence in *Bennett v. Walton City*).

And state courts are clear. Time and again state judges have underscored that municipal policy manuals cannot create a property interest without explicit language

---

[6] *See, e.g.*, *Nelson v. Mustian*, 502 F. Supp. 698, 706 (N.D. Fla. 1980); *Burgess v. Miller*, 492 F. Supp. 1284, 1289 (N.D. Fla. 1980); *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 (11th Cir. 1982) *overruled on other grounds by McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994).

expressing mutual agreement. "Florida law has long recognized that statements in employee handbooks, policy statements, or procedure manuals do not constitute the terms of a contract of employment and thus do not give rise to enforceable contract rights." *Turton v. Singer Asset Fin. Co.*, 120 So. 3d 635, 626 (Fla. 4th DCA 2013). This Court follows the Fifth Circuit's directive to "read the handbook in its entirety to glean the expectations of the parties." *United Steelworkers of America, AFL-CIO*, 599 F.2d at 60. Read in its entirety, this Court finds no explicit language in the CDA's policy manual that creates a contract—express or implied. Because the manual does not create an enforceable contract, it does not confer a property interest protected by Florida's Substantive Due Process Clause.

## IV.   Conclusion

Plaintiffs' equal protection claim fails because they do not identify valid comparators or demonstrate purposeful discrimination. Additionally, the CDA had a rational basis for its decisions to terminate employees who failed to follow protocol. Likewise, Plaintiffs' substantive due process claim fails because they did not have a property interest in their jobs under Florida law. Accordingly, Defendant's motion for summary judgment is **GRANTED**.

**IT IS ORDERED**:

1. Defendant's Second Motion for Summary Judgment, ECF No. 124, is **GRANTED**.

2. The pending motions in limine, ECF Nos. 141, 142, and 143, are **DENIED** as moot.

3. The Clerk must enter judgment stating "Plaintiffs Darryl Newman, Gwendolyn Forehand, and Doyle Hester's claims against the Consolidated Dispatch Agency are dismissed with prejudice."

4. The Clerk shall close the file.

**SO ORDERED on October 4, 2017.**

<u>s/Mark E. Walker</u>
**United States District Judge**